IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2001 Session

## B. GAYDEN PATE, ET AL. v. C & S OF TENNESSEE, INC., ET AL.

**Appeal from the Chancery Court for Cheatham County**
**No. 1-108     Leonard W. Martin, Judge**

---

**No. M2000-02283-COA-R3-CV - Filed May 30, 2001**

---

The plaintiffs signed a contract for the purchase of a new home, conditional on their ability to sell their present home and to obtain a mortgage loan. They gave the defendant developer $30,000 as earnest money. When they were unable to sell their home, they asked for the return of the earnest money. The defendant refused, and the purchasers sued. The trial court ordered the defendant to return the $30,000. We affirm, but we modify the court's judgment to assess interest and attorney fees against the sellers.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, J. and DON R. ASH, SP.J. , joined.

Jerry V. Smith, Dickson, Tennessee, for the appellants, C & S of Tennessee, Inc. and Mark A. Cunningham.

Michael M. Castellarin, Nashville, Tennessee, for the appellees, B. Gayden Pate and wife, Marjorie Pate.

### OPINION

### I.  A CONTINGENT HOME PURCHASE

Gayden and Marjorie Pate owned a 2170 square foot home on Pond Creek Road in the City of Pegram, which was encumbered by a large mortgage ($175,000). They decided they needed to improve their financial situation by selling their home and buying a less expensive residence. On February 1, 1999, they listed the house and the twelve-acre tract upon which it was located with Crye-Leike Realtors, with an asking price of $229,000.

The Pates found a new modular home on Cunningham Court in Kingston Springs that appeared to fit their needs. The home was on a permanent foundation, and was part of Harpeth Valley Estates, a 38-unit subdivision under development by C & S Construction. The developer was using the house as an office and a model home for the subdivision. The Pates spoke to Mark A. Cunningham, president of C & S, and explained that they would have to sell their Pegram home before they could buy a new residence. The developer allegedly explained that if they wanted him to hold the Cunningham Court property for them, they would need to make a substantial deposit. The Pates offered $30,000.

On March 25, 1999, the parties entered into a contract of sale. The pre-printed buy/sell real estate contract was furnished by Mr. Cunningham, with details as to price and conditions that he wrote in by hand indicated here by underlining. The contract recited that "the Buyer herewith deposits with C & S of Tennessee, Inc., the sum of $30,000.00 Dollars as earnest money to constitute part payment of purchase price."

The contract also stated a purchase price of "$99,500, payable as follows: Pay $30,000.00 Down balance at closing." Also, "[t]his contract is contingent upon Buyer's ability to qualify for a new loan whenever a new loan is part of the terms of this contract. Buyer agrees to make said loan application on or before 3-30-99 with CSB Mortgage."

The contract does not contain a time certain for closing or an expiration date, but states in one place that "[t]he sale will be closed Upon Buyers Sale of their Home," and elsewhere that "Time is of the essence of this contract and all of the conditions thereof." The contract also states that in the event a breach of the contract results in a lawsuit, the non-breaching party "shall be entitled to recover reasonable attorney's fees and all costs associated with enforcement."

Three days after signing the contract, the Pates went to the Cheatham State Bank, and filled out an application for a 30-year, $70,000 mortgage loan. The bank granted the application, contingent upon the sale of their home. The contingent approval expired before the home could be sold, and the Pates filed a new application and received another contingent approval.

The Pates were not happy with the efforts made by the Crye-Leike agent to sell their home. On May 27, 1999, they changed to a different agent, Sherry Mills of RE/MAX BCA Partners, and lowered their asking price to $199,900. Ms. Mills arranged for an MLS Listing, printed a color brochure for the property, advertised in Homes Magazine, conducted open houses, and showed the house at least thirty times. At Ms. Mills' suggestion, the Pates did some landscaping and redid the ceilings to make the house more appealing to potential buyers. When the listing agreement with the realtor expired, the Pates renewed it.

By the Fall of 1999, the Pates were tired of the uncertainty of their situation. They asked the bank to give them a final decision on their loan application, and the bank obliged by giving them a statement of credit denial because of "Excessive obligations in relation to income since present home

did not sell." Ms. Pate then called Mr. Cunningham and asked him to void the contract and to return the earnest money. He refused, and suggested that they ought to try to get a bridge loan.

In October, the Pates contacted an attorney. He wrote a letter on their behalf to Mr. Cunningham, dated October 21, 1999, stating that the Pates had been unable to sell their house or obtain a loan, and requesting the return of their $30,000. Mr. Cunningham did not respond to the letter.

## II. PROCEEDINGS IN THE TRIAL COURT

The Pates filed a complaint against C & S on November 19, 1999. They asked the court to issue a declaratory judgment that the contract had expired because of their inability to satisfy the contractual contingencies within a reasonable amount of time, and to order the return of their earnest money. They also asked for $30,000 in damages for breach of contract, and treble damages for violation of the Tennessee Consumer Protection Act, as well as attorney fees and pre-judgment interest.

C & S answered, asking that the complaint be dismissed. The defendant contended that the contract had not expired, because all the parties understood that the sale of the Pates' Pegram home could take an extended period of time, and that the Pates should continue their good faith effort to sell the property.

The plaintiffs subsequently amended their complaint to add a claim for conversion, and to name Mr. Cunningham as a defendant in his individual capacity. The defendants' answer to the amended complaint included a counter-claim for breach of contract. The defendants alleged that by taking the Cunningham Court home off the market, they lost other opportunities to sell the property, thereby incurring monetary damages from the plaintiffs' attempted breach.

The trial court heard the case on July 13, 2000. The witnesses were Gayden and Marjorie Pate, Mark Cunningham, Sherry Mills, and a loan officer with AmSouth Bank, formerly the Cheatham State Bank. The testimony of the parties differed only as to whether the Pates told Mr. Cunningham prior to the formation of the contract that they thought that it would take a long time to sell their home. Interestingly, the Pates testified on the stand that they finally managed to sell their home about two weeks before the hearing, for a sale price of $188,950.

The trial court's judgment was filed on July 24, 1999, and reads in part as follows:

Where the time of performance is not fixed in a contract, the law fixes a reasonable time in which it is to be performed. The Court finds that based on the intent of the parties and the circumstances surrounding this transaction a reasonable time for performance was six months from the contract date of March 25, 1999. This would be September 25, 1999.

-3-

As of September 25, 1999 the plaintiffs had been unable to sell their home on Pond Creek Road despite their good faith efforts to do so. As a result of their inability to sell their home they were also unable to obtain financing. This contract expired on September 25, 1999 because the contingencies were not satisfied within a reasonable time.

The Court finds that the plaintiffs are entitled to the return of their $30,000 earnest money deposit which was paid to C & S of Tennessee, Inc. The Court finds that the plaintiffs are not entitled to pre-judgment interest or attorney's fees against the defendants. The counter-claim of defendant, Mark A. Cunningham, against the plaintiffs is dismissed.

The defendants appealed.

### III. THE DURATION OF THE CONTRACT

Tennessee recognizes an implied duty of good faith and fair dealing in the performance and enforcement of every contract. *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163 (Tenn. Ct. App. 1995). A conditional contract is one where the obligation to perform is dependent upon the happening of some contingency or condition (often referred to as a condition precedent) which is expressly stated in the contract. *Stovall v. Dattel*, 619 S.W.2d 125 (Tenn. Ct. App. 1981). Where a purchasing agreement is contingent upon the buyer obtaining financing, the agreement implies that the buyer will make a reasonable and good faith effort to obtain that financing. *Davidson and Jones Development Co. v. Elmore Development Co.*, 921 F.2d 1343 (6th Circuit 1991).

The parties agree that the contract at issue was contingent on two events: that the Pates sell their Pegram home, and that they obtain a loan to finance the purchase price for the new home. The contract contained no time limit during which these conditions had to be satisfied. Appellants concede the general principle that in the absence of a term in the contract specifying the amount of time by which the contingencies must be met, the law implies a reasonable time. *See Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993).

The developers argue that the circumstances of this case show that the Pates anticipated that it might take them a long time to sell their house, and that the parties therefore intended their contract to provide an extended time to complete the sale. They claim that the unusually large deposit of earnest money was an inducement to them to withhold the house from other potential buyers for longer than they otherwise would have been willing.

While this may very well be true, it does not mean that the contract continues indefinitely. We note that as the drafters of the contract, the appellants could have set a time limit that they deemed sufficient for the appellees to sell their house and obtain a loan. Perhaps it was not to their advantage to do so, because in the interim they were able to use the earnest money as an interest-free $30,000 loan. In any case, Mr. Cunningham testified that he had drawn up hundreds of contracts of

sale during his 16 years in the real estate business, but that only a few of those contracts (he could not specify the number) lacked a closing date.

Interestingly, Sherry Mills testified that in her 17 years as a real estate agent, she had never drafted a sales contract without a closing date, and that a closing date was a standard requirement in the industry for such contracts. She stated that where the sale of the buyer's home is a condition for closing, a reasonable range for a closing date is between 60 and 90 days after the signing of the contract, and that she believed four months to be the outside limit, because "you don't know what's going to happen."

There is nothing in the record to indicate that the trial court failed to take the unusual circumstances of this transaction into account in its ruling. Because of those circumstances, it found that six months was a reasonable time to allow the Pates to sell their house and to close the deal with the appellants. Since the Pates were unable to do so, the court correctly found that they were entitled to ask for the return of their money.

The appellants argued that the effort made by the Pates to sell their Pegram home was deficient, and thus that the failure of the condition precedent was their own fault. They argue that the Pates' initial asking price was unrealistically high in light of the neighborhood where it was located, and the fact that a portion of their 12-acre tract was in the flood plain. The evidence shows, however, that the Pates made a sustained and good faith effort to sell their property, and that they readily lowered their asking price at the suggestion of Ms. Mills. The fact that they ultimately had to settle for a still lower price is not unusual in the real estate business, and cannot be considered evidence of bad faith.

The appellants' counter-claim was based on the idea that they suffered damages from the appellees' breach of contract, because in reliance upon an eventual closing by the Pates, they withheld the Kingston Springs home from other potential buyers. However, even if we agreed that the Pates were guilty of a breach of contract (which we do not) there was no proof of any such damages. Mr. Cunningham testified that several people inquired about the house prior to the Fall of 1999, but that there were no offers.

Further, the defendants were compensated in several ways for withholding the property in question from potential buyers between March 25 and September 25, 1999. During that period, they were able to continue to use the property as an office and model home, and they used the earnest money to pay down a company indebtedness, thus realizing a substantial savings on interest that they otherwise would have paid.

As for the period after September 25, if they had honored the Pates' request to refund the earnest money, the developers could have put the house back on the market, thus mitigating any potential damages. But Mr. Cunningham testified that he took no steps to sell the property after Ms. Pate asked him to void the contract.

## IV. OTHER ISSUES

### A. PRE-JUDGMENT INTEREST

The courts have long been authorized under the common law to award pre-judgment interest in accordance with the principles of equity, as an element of damages. While the allowance of prejudgment interest is discretionary with the trial court, "[t]he general rule is to allow interest in all cases where the amount of the debt is certain and not disputed on reasonable grounds." *Mitchell v. Mitchell*, 876 S.W.2d 830 (Tenn. 1994); *see also* Tenn. Code. Ann. § 47-14-123.

The usual rationale for such an award is that it compensates the obligee for loss of the use of his funds, when that loss has resulted from the obligor's failure to pay an obligation according to its terms. There is no absolute right to pre-judgment interest, but its award has been described as "familiar and almost commonplace," under such circumstances. *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989).

The trial court ruled that the Pates were entitled to the return of their $30,000, but not to any pre-judgment interest. It appears to us, however, that the defendants were obligated to return the money after the Pates notified them that they wished to terminate the contract. They did not do so, but continued to benefit from keeping the money, while at the same time depriving the Pates of its use.

We accordingly award pre-judgment interest to the plaintiffs at the rate of 6% per annum, with the interest calculated as accruing between November 21, 1999, one month after the Pates' attorney made a formal demand for a refund, and the date of the judgment below. Post-judgment interest will accrue at the statutory rate. *See* Tenn. Code Ann. § 47-14-121, 122.

### B. ATTORNEY FEES

As we stated above, the contract of sale was furnished by the defendant developer, and it included a provision for the payment of reasonable attorney fees resulting from litigation. We note that the defendants' counter-claim included a prayer for "reasonable attorney fees as provided in the contract." In light of the defendants' assertion of their own contractual rights, and the expenses incurred by the plaintiffs because of the defendant's refusal to refund their money in a timely way, it appears equitable to require the defendants to fully honor their contract.

We remand the cause to the trial court for the purpose of taking proof and setting a reasonable fee for the Pates' attorney for his services in the trial of this cause and on appeal.

## V.

The judgment of the trial court is affirmed as modified and the cause is remanded to the Chancery Court of Cheatham County for the calculation of pre-judgment interest and attorney fees, and for any further proceedings that may be necessary. Tax the costs on appeal to the appellants, C & S of Tennessee, Inc. and Mark A. Cunningham.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.